JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Robert and Sheila Sykora, individually, and husband and wife

**DEFENDANTS**
Liberty Mutual Insurance Group d/b/a Liberty Mutual Insurance and Liberty Mutual Insurance Company

(b) County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Edward J. Schwabenland, Esquire
366 N. Buck Road
Downingtown, PA 19335

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [X] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [X] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [X] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

*PERSONAL INJURY*
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

*PERSONAL INJURY*
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

*PERSONAL PROPERTY*
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

*Habeas Corpus:*
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

*Other:*
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332; 28 U.S.C. Section 1367

Brief description of cause:
Plaintiffs believe and therefore avers that the defendants decided to arbitrarily and without justification deny full coverage to the plaintiffs a fire loss

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 75,000

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____
DOCKET NUMBER _____

DATE: November 1, 2020

SIGNATURE OF ATTORNEY OF RECORD: *Edward J. Schwabenland*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT and SHEILA SYKORA, individually and husband/wife<br>1194 Collegeville Road<br>Collegeville, PA 19426<br><br>                Plaintiffs<br>v.<br>LIBERTY MUTUAL INSURANCE GROUP INC.<br>d/b/a LIBERTY MUTUAL INSURANCE and/or<br>LIBERTY MUTUAL INSURANCE COMPANY<br>175 Berkeley Street<br>Boston, MA 02116<br>    and<br>LIBERTY MUTUAL INSURANCE COMPANY<br>175 Berkeley Street<br>Boston, MA 02116<br>               Defendants | CIVIL ACTION NO.<br><br><br><br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED<br>PANEL OF 12 JURORS |

## I. PRELIMINARY STATEMENT

1. This is an action for an award of full coverage, attorney's fees and costs, compensation, statutory, treble and punitive damages, also seeking equitable, injunctive and other relief, for defendants' breach of contract and bad faith insurance practices arising out of the defendants' failure to provide full insurance coverage and support to the plaintiffs for the property/building damage which resulted from a fire which occurred on November 3, 2018. Respectfully, the plaintiffs believe and therefore avers that the defendants decided to arbitrarily and without justification deny full coverage to the plaintiffs.

2. Defendants are liable to the plaintiffs for, but not limited to, the below causes of action and aforesaid remedies, for reasons stated, which reasons are currently known, upon information and/or belief, and/or will be proven in discovery and/or at trial.

3. At all times material, plaintiffs herein reserve the right to rely on the "Discovery Rule" and/or the Doctrine(s) of Equitable Tolling/Fraudulent Concealment, respectfully.

## II. JURISDICTION AND VENUE

4. Jurisdiction in this Honorable Court is based on diversity conferred by 28 U.S.C. §1332; supplemental jurisdiction over state law claims are granted by 28 U.S.C. §1367.

5. Venue lies in this District in that the events giving rise to this claim, including, but not limited to, the occurrence of the fire on the plaintiffs' property, occurred in this District, at least (1) defendant does business herein and/or the subject of this action is situated within this District.

III. PARTIES

6. Plaintiffs, Robert and Sheila Sykora, are husband and wife and adult individuals residing at 1194 Collegeville Road, Collegeville, Montgomery County, PA 19426, and are citizens of the Commonwealth of Pennsylvania.

7. The defendant, Liberty Mutual Insurance Group Inc. d/b/a Liberty Mutual Insurance and/or Liberty Mutual Insurance Company, is a corporation or other business entity which is believed to be organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business at 175 Berkeley Street, Boston, MA 02116 and further does and conducts business on a regular basis in the Commonwealth of Pennsylvania, including the Eastern District of Pennsylvania.

8. The defendant, Liberty Mutual Insurance Company, is a corporation or other business entity which is believed to be organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business at 175 Berkeley Street, Boston, MA 02116 and further does and conducts business on a regular basis in the Commonwealth of Pennsylvania, including the Eastern District of Pennsylvania.

9. At all times applicable hereto, it is believed and therefore averred that the defendants acted and failed to act through their agents, servants and employees who at all times acted within the course and scope of their employment.

10. The defendants will collectively be referred to herein as either "Liberty Mutual" or "Insurer".

IV. OPERATIVE FACTS

11. At all times applicable hereto, the plaintiffs were the owners of the real estate located at 1194 Collegeville Road, Collegeville, PA 19426. Said property included the residence of the plaintiffs and other buildings, one of which was a commercial building which had been leased by plaintiffs to Joseph Jeffries/Last Chance Auto Incorporated who conducted an automotive repair shop.

12. At all times applicable hereto, Liberty Mutual provided and issued to the plaintiffs Commercial Insurance Policy Number BKS (19) 56 91 67 60 which covered, among other things, damages due to fire. The effective dates of coverage were from October 15, 2018 to October 15, 2019. Said coverage included the automotive repair shop building. A copy of said policy is attached hereto as Exhibit "A" and is incorporated herein by reference.

13. At all times applicable hereto, the plaintiffs fully paid all required premiums to Liberty Mutual.

14. Pursuant to said policy (Exhibit "A"), Liberty Mutual provided and was obligated to supply, among other things, full replacement costs coverage for the building which was described as "Automobile Repair or Service Shops Auto Glass Replacement, Battery Replacement, Brake Adjustment, Tire Changing, Tune-ups, Oil Changing, Lubrications, Speedometer Adjustments and Similar Services".

15. In addition to providing full replacement costs for the loss of the building due to fire, Liberty Mutual was also obligated to provide coverage for, among other things, cleanup and debris removal, tree removal damaged by the fire, loss of business income, such as rental for the actual loss sustained in a twelve-month period and professional fees and costs (e.g. architectural services, construction estimates etc.)

16. On or about November 3, 2018 in the afternoon, the automotive repair building which was owned by the plaintiffs and which was leased to Joseph Jeffries and Last Chance Auto Incorporated was destroyed by fire. (See copy of the Skippack Fire Company narrative report which is attached hereto as Exhibit "B"). The initial estimate by the fire company was that the approximate building damage/loss was $400,000.

17. The plaintiffs timely reported and made a claim for the loss to Liberty Mutual.

18. Thereafter, the Sykora claim was handled by various individuals (at least 4) over time at Liberty Mutual. All such individuals were physically located outside the Commonwealth of Pennsylvania.

19. Initially, Liberty Mutual advanced certain funds to cover the initial demolition and debris removal and surrounding damage to the property.

20. At or about the end of November 2018, Liberty Mutual also provided a check in the amount of approximately $8,990 which allegedly covered six months of loss of income as it pertained to the rent for that building. In or about January, 2019 the Sykoras received a check in the amount of $1,430.56 as it pertained to the boarding up of the building.

21. In order to assess the full costs needed to replace the building, it was necessary for the Sykoras to retain the services of an architect.

22. Additionally, expenses were incurred for the need to replace and rerun the electrical wiring that had originally run from the destroyed building to another building.

23. The plaintiffs attempted to move the matter forward in order to have the claim and ultimate reconstruction completed.

3

24. As an example, on or about April 30, 2019, Sykora sent an email to the then assigned adjustor Mike Winter advising Mr. Winter that he would like to "wrap up this claim". Sykora indicated that there were a number of matters such as the removal of damaged trees and the value of the destroyed building which they needed to address. At that time, he was requesting a meeting. Prior to that time, Sykora had sent pictures of the damaged trees to the adjustor.

25. Also, the adjustor acknowledged to Sykora that Liberty Mutual would cover all architectural costs.

26. By email of May 1, 2019 Sykora was advised by Terri Pritchard on behalf of Liberty Mutual that she is the "large loss adjustor" had been reassigned to handle the matter "to completion".

27. A meeting was later held on the premises with Ms. Pritchard and another representative of Liberty Mutual in the latter part of June, 2019.

28. On or about June 4, 2019 Liberty Mutual, per Terri Prichard, notified Mr. Sykora by letter of the coverage that Liberty Mutual thought applied to the loss. Said evaluation included replacement costs coverage and actual loss sustained business income and extra expense coverage including rental value. (See copy of said letter which is attached hereto as Exhibit "C").

29. Ms. Pritchard however did not oversee this matter to "completion". Rather, the case was reassigned to the fourth claims adjustor, Stephen Stewart.

30. It is believed and therefore averred that Mr. Stewart became involved with the case on behalf of Liberty Mutual in or about October, 2019.

31. By email of January 6, 2020 Sykora inquired as to reimbursement for the trees that were damaged due to the fire. Stewart replied by email of January 7, 2020 that he first needed a report from an arborist with an estimate as to damaged trees. (Sykora had been advised previously that Liberty Mutual would cover up to $1,200 to deal with the trees. Furthermore, pictures of the trees had been previously sent to Liberty).

32. On or about January 18, 2020 Sykora contacted Stewart by email advising him that the architect now had preliminary drawings for the new building and that he wanted to move forward for a late winter early spring construction. Because of that Sykora inquired as to why Liberty Mutual would "hold back" money for the construction since the contractors needed to be paid.

33. By email of January 21, 2020 Steward advised Sykora as follows: "The hold back funds will be released once work has been completed, and you submit either paid receipts from your contractor's or cancelled checks showing the amounts paid. We will pay amounts you actually incurred over the actual cash value amount up to the agreed replacement costs value." There was no mention by Stewart of any time factor

4

with regard to the actual construction for the return of any moneys initially "held back" until the construction had been completed.

34. On January 28, 2020 Sykora advises Stewart by email as follows: "Steve—I think there are enough issues with this claim that it is now time to have a face-to-face discussion. Let me know when would be a good time for you to stop by to go over all the points that need to be discussed. Thank you." Stewart refused to honor this request.

35. By letter of March 20, 2020 which was emailed to Stewart, counsel for Sykora again suggested that a meeting would be helpful especially since the architect could then be present. This would allow all persons to discuss the outstanding issues. There were two pressing issues at the time. The first was the matter concerning rental income. Initially, Liberty Mutual had only given six months for loss rent. After the meeting with Pritchard Liberty Mutual had come up to nine months. However, as of March 2020 Liberty Mutual had not paid the extra three months. The plaintiffs' position was that the policy specifically required Liberty Mutual to provide twelve months of actual loss rental income. The other and primary purpose for the requested meeting was to enable the plaintiffs as the insureds, to understand what the costs would be for the replacement and reconstruction of the building prior to having to sign a construction contract. Mr. Stewart again refused to meet.

36. By letter of June 4, 2020, Stewart advises Sykora for the first time that all repairs needed to be completed by November 3, 2020.

37. It is believed and therefore averred that Liberty Mutual, its agents, servants and employees were well aware that in early 2020 most businesses, especially those relating to construction and other contractors were literally shutdown because of the Covid-19 pandemic. Furthermore, no permits could be obtained from the township. Added to the problem with the pandemic, Liberty Mutual was advised that the Sykoras' original contractor had suffered a stroke in 2020 and therefore another contractor had to be contacted. Because of the shutdown it was impossible for the plaintiffs to obtain plans and itemized cost estimates from another contractor until the latter part of the summer.

38. By email letter of August 31, 2020 Liberty Mutual was provided with the written estimate from Bruce Heacock of Old School Construction, Inc. for the reconstruction of the building. The written estimate was listed as $203,716. In order to begin the work which, the contractor indicated he could begin as of September 15, 2020 he was requesting a thirty percent down payment (approximately $61,000).

39. The plaintiffs needed to know that Liberty Mutual would approve the plans as well as the costs and the requested funds for the reconstruction of the building.

40. Liberty Mutual did not indicate that it approved these funds. Rather the claims adjustor advised that he needed to speak with the contractor first and question some

5

of the assessments by the contractor. To the plaintiffs' knowledge no contact was ever made between the claims' adjustor and the contractor.

41. The construction contract could not be signed due to Liberty Mutual's actions and non-actions, and no construction has occurred to the present.

42. Respectfully, since at least the fall of 2019 Liberty Mutual's actions were adversarial against the plaintiffs rather than supportive. This was contrary to the obligation owed by Liberty Mutual to its insureds.

43. Liberty Mutual, by its improper actions has sought to protect its own interests over an above that of its insureds.

44. Liberty Mutual has failed in its obligation towards its insureds.

45. For instance, Liberty Mutual has improperly failed to provide its approval for the full replacement costs which would allow the reconstruction of the building and has wrongfully and intentionally reduced the claim to an actual cash value loss in order to save money and in an attempt to close out the claim.

46. Furthermore, Liberty Mutual has improperly taken a depreciation value of $71,513.46 and has indicated that that value although "held back" would not be returned to the plaintiffs once construction was to be completed. Liberty Mutual has also wrongfully made the replacement and reconstruction of the building a financial impossibility for the plaintiffs.

47. Liberty Mutual has improperly denied the plaintiffs their right to a twelve-month loss of the actual rent.

48. Liberty Mutual has improperly delayed and/or failed to pay the reimbursement to Sykora for the funds Sykora initially paid to the architect based upon the assurances by Liberty Mutual that it would cover those costs.

49. Liberty Mutual has wrongfully failed to extend the time period within which the construction and the completion of the project could be undertaken and complete the construction so that any funds which are held back could then be paid to the plaintiffs. In doing so, Liberty Mutual has ignored the obvious restrictions placed on the plaintiffs and contractors in 2020 because of Covid-19.

50. Liberty Mutual has failed to honor and/or has delayed payment for the teardown expenses relating to the removal of three trees and the necessity to redirect the electrical line.

51. To date, Liberty Mutual has failed to provide the full insurance coverage for the claim.

52. At all times material hereto, Liberty Mutual has placed its interests above the interests of the plaintiffs—insured.

V. CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT AND COVENANT OF GOOD FAITH AND FAIR DEALING

53. Plaintiffs incorporate by reference paragraphs 1 through 52 as fully as though said paragraphs were set forth herein at length.

54. At all times material hereto, the plaintiffs and Liberty Mutual were parties to an expressed contract, the commercial insurance policy (Exhibit "A") of which Liberty Mutual is in breach to the plaintiffs' great personal detriment and injuries.

55. By failing to fully pay the covered claim to plaintiffs for the aforementioned loss, Liberty Mutual has breached the contract.

56. By failing to fully pay the covered claim to plaintiffs for the aforementioned loss, Liberty Mutual has breached the covenant of good faith and fair dealing.

57. Liberty Mutual failed to provide the requisite support to its insureds regarding plaintiffs' claims.

58. Liberty Mutual failed to provide coverage for the full replacement costs which would allow for and permit the reconstruction of the building.

59. Liberty Mutual sought to protect its own interests over and above that of the insureds.

60. Liberty Mutual improperly denied the plaintiffs their right to a twelve-month loss of the actual rent.

61. Liberty Mutual in order to save money and in an attempt to close out the claim improperly reduced the plaintiffs claims for full replacement costs to that of an actual cash value loss.

62. The actions and inactions on the part of Liberty Mutual have made the replacement and reconstruction of the building financially impossible for the plaintiffs to achieve.

63. Liberty Mutual's misconduct is in direct violation and breach of its contractual duties and in violation of its legal and ethical responsibilities to the insureds, all to the detriment of the plaintiffs.

64. As a direct and proximate result of Liberty Mutual's breach and misconduct, the plaintiffs have sustained great financial harm.

## COUNT II - BAD FAITH—SPECIAL DAMAGES

65. Plaintiffs incorporate by reference paragraphs 1 through 64 as fully as though said paragraphs were set forth herein at length.

66. The aforesaid actions and omissions of Liberty Mutual constitutes bad faith pursuant to 42 Pa. C.S.A. §8371 et seq.

67. 42 Pa. C.S.A. §8371 entitled "actions on insurance policies" provide as follows:

   In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

   (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
   (2) Award punitive damages against the insurer.
   (3) Assess court costs and attorney fees against the insurer.

68. The actions of the defendant constituting bad faith consists of the following actions and/or inactions as is also described above.

   a) Refusing to provide full coverage to the plaintiffs under the terms and conditions of the policy;
   b) Failing to provide full replacement costs but rather reducing the claim to a lesser value under actual cash value loss;
   c) Improperly taking a depreciation value of $71,513.46 and withholding it from the plaintiffs and advising that the plaintiffs can never seek reimbursement for the money which is held back even were the construction to be completed;
   d) Improperly denying the plaintiffs their right to a twelve-month loss of the actual rent;
   e) Improperly delaying and/or failing to pay the reimbursement to Sykora for the funds Sykora initially paid to the architect based upon the assurances by Liberty Mutual that it would cover these costs;
   f) Failing to honor its coverage requirements and/or delaying payment for the teardown expenses relating to the removal of three trees and the necessity to redirect the electrical line;
   g) Failing to provide the full insurance coverage for the claim;
   h) Failing to properly advise the plaintiffs and provide necessary support as the plaintiffs work through their loss;
   i) Failing to meet with the plaintiffs in 2020 so that the matter could be advanced to begin the actual reconstruction;
   j) Improperly delaying its approval for the actual reconstruction to begin;
   k) Failing to approve the plans as well as the costs and the requested funds for the reconstruction of the building to begin;

    l) Failing to extend the time within which the full reconstruction could be undertaken and completed which would allow the plaintiffs an opportunity to request the depreciated value to be returned to them;

    m) Failing to assist the plaintiffs by taking reasonable steps to be supportive in an effort to complete the reconstruction of the building;

    n) Failing to act in a supportive manner required of the insurer for its insureds but rather taking an adversarial position;

    o) Failing to provide the full insurance coverage for the claims.

    p) Failing to timely honor its obligations pursuant to the policy; and

    q) Creating an adversarial environment against its insureds the result of which has made the plaintiffs' right to reconstruct the building a financial impossibility.

69. To add insult to injury Liberty Mutual, in its letters/emails would close with the following statements:

"We will keep you updated during this adjustment. We appreciate your business and are committed to providing you with excellent service. Please do not hesitate to contact the undersigned should you have any questions or concerns…we look forward to working with you towards the successful resolution of this claim."

70. Because of Liberty Mutual's misconduct and as a direct and proximate result of the bad faith conduct of Liberty Mutual, the plaintiffs have sustained great financial harm and loss.

## COUNT III – UTPCPL

71. Plaintiffs incorporate by reference paragraphs 1 through 70 as fully as though said paragraphs were set forth herein at length.

72. The aforementioned conduct of Liberty Mutual constituted an "unfair or deceptive practice" within the meaning of the UTPCPL.

73. Liberty Mutual's conduct surrounding the refusal to provide coverage to the full extent of the damages suffered by the plaintiffs and their failure to provide timely and proper support to the plaintiffs with regard to the handling of their claims constitutes "unfair and deceptive acts or practices".

74. The UTPCPL authorizes the Court, in its discretion, to award up to three (3) times ("treble", the actual damages sustained for violations, as well as attorney's fees, for which relief plaintiffs are entitled).

VI.    PRAYER FOR RELIEF

    WHEREFORE, plaintiffs respectfully request judgment in their favor and against Liberty Mutual in an amount in excess of $75,000, including

9

a) compensatory, statutory, treble and punitive damages;
b) reasonable attorney's fees, costs and interests; and c) such other and further relief as this Court may deem proper;
c) a full accounting from Liberty Mutual for any funds paid, the time of payment and the reasons for same; and
d) such other and further relief as this Court may deem proper.

Respectfully submitted,
/s/ *Edward J. Schwabenland*
Edward J. Schwabenland
Attorney for Plaintiffs

Dated: November 2, 2020

## VERIFICATION

I, Sheila Sykora, hereby verify that I am the plaintiff in the foregoing matter and that the facts set forth in the Complaint are true and correct to the best of my knowledge, information and belief; and, that this statement is made subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

*Sheila Sykora*
SHEILA SYKORA

Dated: 10/29/2020

## VERIFICATION

I, Robert Sykora, hereby verify that I am the plaintiff in the foregoing matter and that the facts set forth in the Complaint are true and correct to the best of my knowledge, information and belief; and, that this statement is made subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

_____
ROBERT SYKORA

Dated: 6/29/2020